# UNITED STATES DISTRICT COURT

for the

Western District of Texas

Division

| | | |
|---|---|---|
| Gary Juan Subialdea<br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br>-v-<br>Dept. of Homeland Security/CBP<br>Houlton Sector Border Patrol<br>Michael Todd Smith<br>James Trainor Jr.<br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | Case No. W17CA096<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ☒ Yes ☐ No |

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Gary Subialdea |
| Street Address | 2508 Hanson Rd |
| City and County | Killeen, Bell County |
| State and Zip Code | Texas |
| Telephone Number | (207) 214-2998 |
| E-mail Address | gisubi@netscape.com |

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Michael Todd Smith |
| Job or Title *(if known)* | Patrol Agent In Charge |
| Street Address | 67 Park Road |
| City and County | Baring, Washinton County |
| State and Zip Code | Maine, 04694 |
| Telephone Number | (207) 454-3613 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | James Trainor Jr. |
| Job or Title *(if known)* | Deputy Patrol Agent In Charge |
| Street Address | 67 Park Road |
| City and County | Baring, Washington County |
| State and Zip Code | Maine, 04694 |
| Telephone Number | (207) 454-3613 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Houlton Sector Border Patrol |
| Job or Title *(if known)* | |
| Street Address | 96 Calais Rd |
| City and County | Hodgdon, Aroostook County |
| State and Zip Code | Maine 04730 |
| Telephone Number | (207) 532-6521 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Dept. of Homeland Security |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | Washington, DC |
| Telephone Number | |

E-mail Address *(if known)*

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Title 18, United States Code, Section 1001
EEO law violations
Hostile Work Environment

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

a. If the plaintiff is an individual

The plaintiff, *(name)* Gary Juan Subialdea, is a citizen of the State of *(name)* Texas.

b. If the plaintiff is a corporation

The plaintiff, *(name)* ____, is incorporated under the laws of the State of *(name)* ____, and has its principal place of business in the State of *(name)* ____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual

The defendant, *(name)* Michael Todd Smith, is a citizen of the State of *(name)* Maine. Or is a citizen of *(foreign nation)* ______.

b. If the defendant is a corporation

The defendant, *(name)* ______, is incorporated under the laws of the State of *(name)* ______, and has its principal place of business in the State of *(name)* ______. Or is incorporated under the laws of *(foreign nation)* ______, and has its principal place of business in *(name)* ______.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

$1,118,500.00 determined as follows:

My attorney fees for my EEO case number HS-CBP-22894-2012 were about $30,000.00. EEO refused to grant me attorney fees. I ask that I be awarded $30,000.00 each from PAIC Smith and DPAIC Trainor so that they will know first-hand the finincial burden that their illegal acts produced for their victim.

Since the Agency was granted a summary judgement (EEO case number HS-CBP-22894-2012) obtained through false and misleading testimony by management officials, I was denied a hearing where I could have brought witnesses to refute their false statements. I ask that my initial request of $300,000.00 in EEO case number HS-CBP-22894-2012 be awarded to me.

Because the Agency obtained their summary judgement against me through illegal means and my attorney fees were not paid, I could not afford to hire an attorney to respresent me in my other EEO complaints, and I could not do it myself while working ten-hour days and rotating shifts. For this I ask for an additional $300,000.00.

I feel as though I was forced into retirement. The high level of self-confidence that I once had was damaged significantly by the hostile work environment that I was forced to endure for my last several years with the Border Patrol. That damages my ability to seek another career. More importantly, I could have worked until I was 57 years old, but I felt forced into retirement by the hostile work environment created by the Houlton Sector Management team. It went all the way up to the Chief, who refused to take meaningful action. I ask that I be awarded my annual salary for the years of employment that I feel was denied to me due to the hostile work environment and working under a microscope. This period would have been from February 1, 2016 and continues until my mandatory retirement on August 22, 2019. This is approximately 3.5 years. I retired at the GS13 step 8 level with 25 percent overtime (about $131,000 per year on the OPM 2017 GS pay scale). 131,000 X 3.5 = $458,500.00. I ask for $458,000.00, which is about what I would have made had I not been able to work until my 57th birthday.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1. On or about January 3, 2011, I was separately ordered by Calais, Maine Border Patrol Station PAIC Michael Todd Smith to submit a memorandums to Houlton Border Patrol Sector Chief Joseph Mellia explaining why I advised Micaela Hotham of her EEO rights. Possible disciplinary action against me was clearly implied. This was retaliation for advising Hotham of her EEO rights.

2. On January 6, 2011, while I was at the Portland, Maine Jetport with my family awaiting my son's flight departure, I received a call from PAIC Smith regarding my memorandum dated January 3, 2011. He stated that Houlton Sector staff was demanding more details about my EEO discussions with Intern Hotham, and specifically why I advised her that pregnancy was one of the bases for an EEO complaint. It was very stressful and uncomfortable to be explaining my actions to my PAIC surrounded by my family. Disciplinary action was even more clearly implied this time. While they later rescinded the memo demand, this was extremely stressful for me and my family and was retaliation for me advising Hotham of her EEO rights. This changed my work environment until I retired on January 31, 2016.

3. At various times, both PAIC Michael Todd Smith and DPAIC James Trainor Jr. made insulting remarks about the Catholic religion. This violated my EEO rights. My family and I are Catholic. I should not have been subject to this treatment by my supervisors in the Federal workplace. Numerous witnesses, including me, submitted sworn testimony about this in EEO Case HS-CBP-00592-2013 and Management Inquiry Case 201304053

4. In early 2012, I witnessed PAIC Smith simulating masturbation for an extended period of time, during which he did not respond to my loud verbal questions, in his office while on duty, in uniform and seated at his desk in front of Marc Podschlne, Joshua Hoyt and myself. I submitted sworn testimony about this incident in EEO Case HS-CBP-00592-2013 and Management Inquiry Case 201304053. PAIC Smith received a cash award from Houlton Sector in 2012. That was a disgusting violation of our EEO rights

5. Also in early 2012, I witnessed DPAIC James Trainor Jr. taunting SBPA Podschlne, telling him that PAIC Smith was rubbing all of Podschlne's desk items all over his private parts. Janitor John Beach later confirmed that he had witnessed PAIC Smith do those disgusting acts with Podschlne's desk items. Since PAIC Smith also disliked me, I believe that he very likely did the same to my desk items.

6. From early 2012 until I retired, PAIC Smith and DPAIC Trainor did not discuss day-to-day station operations one-on-one with me. They did not share as much information with me as they did with other supervisors. I often learned of changes from other supervisors and agents. This put me at a disadvantage operationally and made me look bad when Sector called and ask about things. This damages my professional reputation.

7. On July 3, 2012, DPAIC Trainor spoke to me in a very negative and condescnding tone in front of station mechanic James Cullen. It was about a schedule adjustment that I had made, just like I had been doing for well over a decade as a supervisor. Trainor claimed that I knew about a procedural change he had made while I was on annual leave. He had emailed this unusual and unprecedented rule change. It was my first day back and I did not have time to read through my 129 unread emails prior to muster, so I did not read it, and he did not advise me verbally. I advised him that I was not aware of those emails, and asked him to look the G-259 over and let me know if he would approve of the changes. I told him that I did not appreciate his condescending tone. I explained to him that I have almost 24 years in the Border Patrol, and there is no reason for him to speak to me like that. He returned to his office. He did this in front of the station mechanic, not affording me any privacy. The workplace hostility towards me was intensifying.

8. On July 9, 2012, during a discussion that I initiated in his office about an unrelated matter, PAIC Smith referred to my legitimate use of sick leave as a "little vacation" and that I left them "hanging" because of my leave use. He went on to berate me and told me that he had no respect for me. I left his office at that time. That represented another escalation of the hostile work environment against me.

  Later on July 9, 2012, I demanded to speak with PAIC Smith aboout his earlier negative comments. I

explained to him that I was offended by his earlier comments, but he told me that he stood by his words. I explained to him that I was in extreme pain when I requested sick leave. He said again that he stood by his words. I advised him that I intended to file a complaint against him because of it. I suffer from degenerative disc disease in my lower back, and despite many attempts to lessen the pain prior to requesting sick leave I was unable to walk without extreme lower back pain which caused an involuntary curvature of my spine.

9. In August 2012, PAIC Smith and DPAIC Trainor were both contacted by EEO regarding the complaints I filed against them. On August 30, 2012, I was advised by PAIC Smith during muster at 1600 hours that the Health and Safety Inspection would take place the following day. As this was one of my collateral duties and with less than 24 hours notice (very unusual), I volunteered to change my days off so that I could attend. PAIC Smith denied my request. I worked with the agents on the evening and midnight shifts to prepare the station as best we could. SBPA Matthew Carver and BPA Kevin Scarlett attended the inspection the following day. They both advised me that we passed the inspection. Even Maintenance Mechanic Jasper Lee, who I do not supervise, told me that the inspection went well. This was confirmed on November 28, 2012 when the Inspection Report was emailed to me. It stated in all-caps that there were no deficiencies noted. I strongly believe that the short notice was intentional on the parts of DPAIC Trainor and PAIC Smith and done to make me look bad, but we passed the inspection anyway.

10. On October 19, 2012, over seven weeks later, DPAIC James Trainor Jr. falsely claimed that Calais Station had failed the Health and Safety Inspection and also stated that he was being "very generous" with my ratings. He refused to explain why he had not brought it to my attention at any time during the seven weeks following the inspection. This was a false "failure" that was created by PAIC Smith and DPAIC Trainor in order to tarnish my reputation while an EEO investigation involving them was ongoing. I believe that they maliciously conspired to create the false impression, using false and misleading testimony, of a failed safety inspection. It contributed to the hostile work environment.

11. January 1, 2013, DPAIC Trainor signed an Unsworn Declaration Under Penalty of Perjury regarding EEO case number HS-CBP-22894-2012. His declaration contained numerous false and misleading statements regarding the supposedly "failed" inspection and other events. His false and misleading testimony is now in writing and under penalty of perjury.

12. On January 2, 2013, PAIC Smith signed an Unsworn Declaration Under Penalty of Perjury regarding EEO case number HS-CBP-22894-2012. His declaration contained numerous false and misleading statements regarding the two discussions we had on July 9, 2012, the supposedly "failed" inspection and other events. His false and misleading testimony is now under penalty of perjury.

13. On March 3, 2013, DPAIC Trainor denied my request for the Calais Station Marine Unit to work evening shift in order to gather intelligence in our assigned areas. He stated via email that I would need to complete an operations order to make it happen. This was an unprecedented requirement which I believe was done to make my job more difficult, continuing the hostile work environment.

14. On July 18, 2013, PAIC Michael Todd Smith gave false and misleading testimony while under oath regarding EEO case number HS-CBP-22894-2012.

15. On July 18, 2013, DPAIC James Trainor Jr. gave false and misleading testimony while under oath regarding EEO case number HS-CBP-22894-2012.

16. On October 25, 2013, I was told by DPAIC Trainor that "joking around" at muster was inappropriate. None of the other supervisors were not told to stop this, and they all "joke around" during muster. I believe that the entire Border Patrol jokes around at some point during muster. This was just another way for DPAIC Trainor to make my worklife a little more unpleasant.

17. In 2013, I was disciplined for contacting an Agency attorney about immigration law regarding arrests made

at my station. One of my duties as a supervisor was to seek clarification regarding laws that we enforced. I later learned that the attorney worked with the attorneys representing the Agency in my EEO case. It was blatant retaliation for my EEO activity and my sworn testimony involving Houlton Sector managers. More hostility for my worklife.

18. On March 19, 2014, DCPA Casillas made it clear to all the agents that things at Calais Station would be handled differently from now on BECAUSE of the EEO complaints that had been filed and the misconduct that had been reported to the Joint Intake Center. I believe that the intent was to intimidate agents who might consider testifying or were listed as witnesses in any of the several EEO cases filed at Calais Station. (EEO complaints from three different agents and a contract employee, and Management Inquiries resulting from those EEO complaints). He made an example out of me. Later that afternoon he singled me out, cleared everybody else out of the conference room and threatened my job. This escalated the retaliation against me and others who had filed EEO complaints considerably. The entire Calais Station knew then that the entire Sector Management team was set against those who filed EEO complaints or reported wrongdoing.

19. In September 2015, Supervisory Border Patrol Agent Matthew Carver and I attended management inquiry training where one of the Agency attorneys bragged that they enjoy a distinct advantage in all but one of the courts they practice in, with the FLRA being the one where they do not have an advantage. This clearly suggests that they believe that the Agency enjoys an advantage in EEO court. Courts in the United States of America are by principle supposed to treat people equally. I believe that the system puts the victims of EEO violations at a severe disadvantage. This should have been brought to my attention by the Agency during EEO training prior to filing my complaints and hiring an attorney. His comments expose the unfairness of the EEO court I had to go through.

20. In September 2015, during a Houlton Sector supervisor meeting, one of the Agency attorneys spoke of how proud he was of his attorney friend who badgered a supervisor so badly that the supervisor was unsure if his very own signature was his own. He closed his session by laughingly reading a slide, oh yeah, and I have to put this in there, always tell the truth. It was clear that he did not care one bit about the truth. The Agency attorney's comments demonstrate that they are not interested in the truth. I strongly believe that the Agency attorneys encouraged Houlton Sector managers to submit false testimony.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

My attorney fees for my EEO case number HS-CBP-22894-2012 were about $30,000.00. EEO refused to grant me attorney fees. I ask that I be awarded $30,000.00 each from PAIC Smith and DPAIC Trainor so that they will know first-hand the finincial burden that their illegal acts produced for their victim.

Since the Agency was granted a summary judgement (EEO case number HS-CBP-22894-2012) obtained through false and misleading testimony by management officials, I was denied a hearing where I could have brought witnesses to refute their false statements. I ask that my initial request of $300,000.00 be awarded to me.

Because the Agency obtained their summary judgement against me through illegal means and my attorney fees were not paid, I could not afford to hire an attorney to respresent me in my other EEO complaints regarding the continued hostile environment I was forced to endure. For this I ask for an additional $300,000.00, but I ask that this be paid to a fund for charity/education to be controlled by me and distributed as I see fit.

I feel as though I was forced into retirement. The high level self-confidence that I once had was damaged significantly by the hostile work environment that I was forced to endure for my last several years with the Border Patrol. That damages my ability to seek another career. More importantly, I could have worked until I was 57 years old, but I felt forced into retirement by the hostile work environment created by the Houlton Sector Management team. It went all the way up to the Chief, who refused to take meaningful action. I ask that I be awarded my annual salary for the years of employment that I feel was denied to me due to the hostile work environment and working under a microscope. This period would have been from February 1, 2016 and continues until my mandatory retirement on August 22, 2019. This is approximately 3.5 years. I retired at the GS13 step 8 level with 25 percent overtime (about $131,000 per year on the OPM 2017 GS pay scale). 131,000 X 3.5 = $458,500.00. I ask for $458,000.00, which is about what I would have made had I not been able to work until my 57th birthday.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 04/13/2017

Signature of Plaintiff

Printed Name of Plaintiff Gary Juan Subialdea

### B. For Attorneys

Date of signing:

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

| | |
|---|---|
| Signature of Attorney | |
| Printed Name of Attorney | |
| Bar Number | |
| Name of Law Firm | |
| Street Address | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address | |

Page 10 of 10

Continuation of US District Court Case

Complaint for a Civil Case

II. Basis for Jurisdiction

    B. If the Basis for Jurisdiction Is Diversity of Citizenship

        2. Defendants

           a. The defendant, James Trainor Jr., is a citizen of the State of Maine.

1301 Clay Street, Suite 160N
Oakland, CA 94612

U.S. Customs and
Border Protection

**Gary J. Subialdea**
**Complainant**

**and**

**Janet Napolitano**
**Secretary,**
**Department of Homeland Security**

**Case Number: HS-CBP-22894-2012**

# Investigative File